# STATE OF MICHIGAN

# COURT OF APPEALS

LAURA SELVA,

Petitioner-Appellee,

v

CITY OF WARREN,

Respondent-Appellant.

UNPUBLISHED
October 22, 2015

No. 322140
Tax Tribunal
LC No. 00-461568

Before: M. J. KELLY, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals by right the judgment of the Tax Tribunal granting petitioner's request for a poverty exemption from her 2013 property taxes on her residential property. We affirm.

## I. BACKGROUND

Petitioner submitted a City of Warren Poverty Exemption Application to respondent's December board of review. On her application, petitioner indicated that her monthly income consisted of $826 in social security disability payments. With the application she included a copy of her social security benefit statement, a copy of what appears to be a bank statement, a proof of being enrolled in Medicaid, and a copy of her driver's license. Petitioner answered "N/A," when asked to provide a copy of her state income tax return and "Homestead Tax Credit . . . [f]iled in the current year or immediately preceding year[] (if required to file)," specifically noting that she "never filed." She requested that any correspondence be forwarded to a physical rehabilitation facility where she was receiving inpatient treatment. The board of review denied petitioner's request on the grounds that she had submitted an incomplete application.

Petitioner appealed to the Small Claims Division of the Tax Tribunal. She explained that on the exemption application form she had written "N/A" next to the identified "documents that did not apply" in her situation because she did not have those documents. At the appeal hearing, respondent asserted that petitioner did not occupy the property within the meaning of MCL 211.7u(2)(a). The Tribunal found otherwise, concluding that petitioner occupied the property during the relevant tax year and that she was entitled to the poverty exemption. On appeal, respondent argues that the Tribunal erred in finding that petitioner occupied the property.

## II. ANALYSIS

-1-

This Court has a very limited capacity to review decisions of the Tax Tribunal. *President Inn Props, LLC v Grand Rapids*, 291 Mich App 625, 630; 806 NW2d 342 (2011). "In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994). "Substantial evidence supports the Tribunal's findings if a reasonable person would accept the evidence as sufficient to support the conclusion." *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 434; 830 NW2d 785 (2013). Substantial evidence "may be substantially less than a preponderance of the evidence." *City of Wayne v State Tax Comm*, 261 Mich App 174, 187; 682 NW2d 100 (2004).

The homestead property tax exemption for persons unable to pay property taxes because of poverty is governed by MCL 211.7u(1), which provides that "[t]he principal residence of persons who, in the judgment of the supervisor and board of review, by reason of poverty, are unable to contribute toward the public charges is eligible for exemption in whole or in part from taxation under this act." MCL 211.7dd(c) defines a "[p]rincipal residence" as "the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established." A property owner claiming a principal residence exception (PRE) is required to file an affidavit with the local taxing authority attesting that the property is owned and occupied as a principal residence. MCL 211.7cc(2).

In order to be eligible for a PRE, an applicant must do several things "on an annual basis," including: "Be an owner of and occupy as a principal residence the property for which an exemption is requested." MCL 211.7u(2)(a). Respondent argues that petitioner does not qualify for a PRE because she did not "occupy" the subject property as her principal residence. Answering this assertion requires us to interpret the relevant statutory language.

> The primary goal of statutory interpretation is to give effect to the Legislature's intent, focusing first on the statute's plain language. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). "The words of a statute provide 'the most reliable evidence of its intent. . . .' " *Id.*, quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). When construing a statute, a court must read it as a whole. *People v Jackson*, 487 Mich 783, 791; 790 NW2d 340 (2010). [*Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011).]

We construe a tax exemption statute in favor of the taxing unit. *OCLC Online Computer Library Ctr, Inc v Battle Creek*, 224 Mich App 608, 611-612; 569 NW2d 676 (1997).

The word "occupy" is not defined in the statute. Where a term is undefined by the statute, it "shall be construed and understood according to the common and approved usage of the language." MCL 8.3a. See also *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). We may consult dictionary definitions when trying to determine the "common and approved" use of statutory language. *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012).

Respondent suggests that this Court apply the definition of "occupy" that our Supreme Court set forth in *Liberty Hill Housing Corp v City of Livonia*, 480 Mich 44; 746 NW2d 282 (2008). In *Liberty Hill Housing*, our Supreme Court interpreted MCL 211.7o, which created an ad valorem property-tax exemption for charitable institutions and provided that in order for the exemption to apply, the " 'real estate must be *owned and occupied* by the exemption claimant.' " *Id.* at 50, quoting MCL 211.7o(1) (emphasis in original). To aid its interpretation of the statute, the Court looked to the following dictionary definition of "occupy":

> "—*v.t.* 1. to have, hold, or take as a separate space; possess, reside in or on, or claim: *The orchard occupies half the farm.* 2. to be a resident or tenant of; dwell in. 3. to fill up, employ, or engage: *to occupy time reading.* 4. to engage or employ the mind, energy, or attention of: *We occupied the children with a game.* 5. to take possession and control of (a place), as by military invasion. — *v.i.* 6. to take or hold possession." [*Id.* at 56-57, quoting *Webster's Universal College Dictionary* (1997) (emphasis in original).]

The Court concluded that the third, fourth, and fifth definitions were inapplicable based on the context of MCL 211.7o, and that the first definition was inapplicable because it would render the word "owner" surplusage, reasoning that parts of the first definition "are synonymous with ownership." *Id.* at 57-58. The Court reasoned:

> [T]he Legislature must have intended the term "occupy" to mean the other aspect of the dictionary definition: to "reside in or on" or "to be a resident or tenant of; dwell in." This aspect of the definition especially makes sense when viewed in its specific context, it is "real or personal property" that must be "occupied." "Reside" means "1. to dwell permanently or for a considerable time; live. 2. (of things, qualities, etc.) to be present habitually; be inherent ([usually followed] by *in*)." *Webster's Universal College Dictionary* (1997). Thus, aided by this dictionary definition, we conclude that to occupy property under MCL 211.7o(1), the charitable institution must at a minimum have a regular physical presence on the property. [*Id.* at 57-58 (emphasis in original and footnote omitted).]

A successor to the dictionary cited to in *Liberty Hill Housing* specifically identifies the link between ownership and occupation in defining "occupy" to mean, in part, "to reside in as an owner or tenant." *Merriam-Webster's Collegiate Dictionary* (11th ed). To "reside" somewhere means "to dwell permanently or continuously: to occupy a place as one's legal domicile." *Merriam-Webster's Collegiate Dictionary* (11th ed). And a "domicile" is defined in the legal vernacular as "a person's true, fixed, principal, and permanent home, to which that persons intends to return and remain even though currently residing elsewhere." *Black's Law Dictionary* (8th ed).

In the case now before this Court, petitioner's absence from the home was not due to her intention to turn her home into rental property or otherwise not return to it permanently. There are several facts that support this conclusion. First, petitioner represented on the poverty exemption application that she had lived at the property "all [her] life," and that she had inherited the "home in 1999 when Mom passed away." Second, petitioner identified the phone number for the rehabilitation center where she was then staying as her "Temp[orary] phone," and she asked

that all correspondence be forwarded to the rehabilitation center where she was "getting inpatient physical Rehab *at this time*." (Emphasis added.) The phrase "at this time" indicates an understanding that the stay at the facility was not perpetual (as is consistent with the purpose of a rehabilitation facility). Third, in her appeal to the Tax Tribunal, indicated she was "temporarily in Rehab recovery" and noted that she had not received the denial form because respondent refused to send it to her at the "rehab center where I am staying at temporarily." All of these statements by petitioner support the Tribunal's finding that, although temporarily absent from the property, petitioner intended to return to the property and permanently reside there after completing her physical rehabilitation. Based on these findings that we cannot overturn, petitioner therefore occupied the residence during the relevant tax year.[1]

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro

---

[1] Respondent argued in part before the Tribunal that the property was not occupied within the meaning of the statute because there had been no water use since 2008. However, the Tribunal found that respondent's assertions were not supported with documentary evidence. Review of the record does not reveal any documentary evidence regarding water usage on the property. On appeal, respondent attaches a document that it purports to be the water usage on the property. However, the parties may not expand the record on appeal. *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013).